UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF MICHIGAN



FEB 2 8 2025

CLERK'S OFFICE
DETROIT

FRANK RICHARDSON,

    PETITIONER,

v.

UNITED STATES OF AMERICA,

    RESPONDENT.

Case No. 10-cr-20397
11-cr-20444

PETITONER"S SUPPLEMENTAL
BRIEF IN RESPONSE TO THE
GOVERNMENT'S BRIEF IN
OPPOSITION FOR COMPASSIONATE
RELEASE PURSUANT TO TITLE
18 U.S.C. 3582(c)(1)(A)
"EXTRAORDINARY AND COMPELLING
REASONS"

---

    On or about November 11,2024 , this Honorable Court issued an
Order both to the governement and petitioner to file supplemental
briefs as to their position for and against relief Pursuant to
18 U.S.C. 3582(c)(1)(A), Motion for Compassionate Relbase for
"Extraordinary and Compelling Reasosn." The government then re-
quested that all briefing be stayed until the resolution of both
United States v. Bricker, No.24-3286 and United States v. Mc Henry,
No. 24-3289 that are currently before the Court of Appeals for the
Sixth Circuit.

The requested stay by the government was filed on or about 11/25/24, yet on the very next day 11/26/24, the government went ahead and filed their Motion in Opposition (Supplemental Brief), asking that this Court deny Petitoner's motion in same while also asking that the matter still be stayed pending the outcome of the aforemention. Due to the fact that they went ahead and filed their supplemental brief, Petitioner now ask that the request to stay said proceedings be denied and this Honorable Court rely upon the authorities cited herein and grant instant petition for relief under 18 U.S.C. 3582 (c)(1)(A), as they support his position and lays out the authority that Congress delegated to the U.S.S.C. for the implementation of what constitute "extraodinary and compelling reasons" and Courts are to consider for motions brought forth under 18 U.S.C. 3582(c)(1)(A).

Not to cast aside the set precedence that the United States Supreme Court handed down in <u>Concepcion v. United States,</u> 142 S.Ct. 2389(2022), which articulated that Court's are to consider what the Sentencing Commission went ahead and handed down by way of Congress delegated authority for them to do so in matters such as this. The government would want to have it both ways as it relates to this matter, but once a Order is handed down and compliance to same is undertaken by a party under same, then they are bound by their position and should not be givien multiple chances to litigate and relitigate issues that they ask to stay and then cast aside any ruling on same by advancing their argument on outdated and overruled precedence.

In support of Petitioner's request for relief, he argues as follows;Congress instructed the U.S.S.C.  to implement guidance for motions being brought forth under title 18 U.S.C. 3582(c)(1)(A),

and what Court's can and must consider as "extraodinary and compelling reasons" for compassionate release in Section 1B1.13(b)(6) and how it applies to Section 403, which they in fact did on November 1, 2023. Which predates the previous rulings that the government now rely upon non prevailing in instant matter. United States v. Mc Call, 56 F.th 1056(6th Cir. 2022),which was clearly overruled by the ruling in Concepcion v. United States, 142 S.Ct.2389(2022), subsequently also predating the guidance by the U.S.S.C. handed down in November of 2023, yet in line with what they implemented and found to apply and warrant relief for "extraordinary and compelling reasons" as with case at bar. Congress spoke, as did the U.S.S.C. when they articulated in 28 U.S.C. 994(t). With these findings in and of themselves, the governement's brief falls on it's merits and relief is warranted.

Under the aforemetion, there is no doubt that this Court has the authority and right to grant instant Petition as that of above mention facts and law support same as well as the following.

Under the 3553(a) Factors, petitioner has shown and submitted meritous facts that warrant relief and show that any prior position by government is no longer applicable for past findings. Petitioner has submitted  letters from staff at institution showing his demeanor and character pot-incarceration, his post-rehabilitation which the government conceded was commendable, his age which is now 51 years old, couple with studies found by the U.S.S.C. that persons over the age of 50 recidivism is low and has a less likely chance to reoffend upon release. Which is backed up by the FBOP findings and that Petitioner's recidivism level is (low) under their guidance for charting same. Not to mention his conduct since being incarcerated for over 15 years now, with 11 in a High custody which is violent

3

by nature and most whom are in such enviroments have rule violations for weapons, fighting and other major infractions.(The High Custody Level is due to the sentence and not Petitioner's conduct). These factors alone speak volumes, yet one must also consider the sentencing disparity of that of his sentence and his codefendant's which is grossly disproportionate of those similiar situated as himself, all supporting relief under 3553(a).(emphasis added). Even the prior juvenile adjudication that the governemt raised fail in light of the continuing evolving and newly Congress delegated authority given to the U.S.S.C. by them in November 2024, which went into effect on November 1,2024. Dealing with the mental state of offenders under the age of 25 no longer being applicable or to be weighed against a prisoner requesting relief. From same, Petitioner asserts that under all listed 3553(a) Factors previously submitted to this Court, they overwhelmingly are in his favor and warrant relief along with all other issues raised and facts and law herein.

Turning again to the crux of the government's argument and that being that the U.S.S.C. oversteped their authority. This claim fails for the following reasons, Concepcion,Id., in fact gave clear and precise reasons to Courts as to what is to be considered and rises to what constitutes "extraodinary and compelling reasons." Including intervening changes in the law, non-retroactive intervening changes in the law and to guideline amendments, or changes in the facts of post-rehabilitation and behavior in prison respectively.

In its analysis, the Supreme Court also made clear that the only express statutory limitation applicable to a request for reduction of sentence under 3582 is as follows:
> [i]n the case of a defendant who has been sentenced

to a term of imprisonment based on a sentencing
range that has subsequently been lowered by the
Sentencing Commision... the court may reduce the
term of imprinment, after considering the factors
set forth in Section 3553(a) to the extent that
they are applicable, if such a reduction is consis-
tent with applicable policy statements issued by
the Sentencing Commision.

For those proceedings, Congress expressly cabined
district courts' discreation by requiring courts to
abide by the Sentencing Commission's policy state-
ments. See also 3582(c)(1)(A)(permitting district
courts to grant compassionate release in certain
circumstances if 'such a reduction is consistent
with applicable policy statements issued by the
Sentencing Commission').

Sl.Op. at 10-11. As to whether a district court may consider non-
retroactive intervening changes to the law and facts, the Supreme
Court pointedly held:

Consistent with th[e] text of the [First Step Act of
2018] and structure, district courts deciding First
Step Act motions regularly have considered evidence
of post-sentencing rehabilitation and unrelated
Guidelines amendments when raised by the parties.
Moreover, when raised by parties, district courts
have considered nonretroactive Guidelines amend-
ments to help inform whether to reduce sentences at
all, and if so, by how much.[citations ommited].

Sl. op.. at 14-15(emphasizing that the district courts have full discreation to consider non-retroactive intervening changes in the law when deciding whether to grant a sentence reduction under the First Step Act of 2018).

The Supreme Court's opinion in Concepcion leaves little doubt that Mc Call was wrongly decided and being relied upon. As the reasoning in McCall is that a district court could not consider non-retoactive intervening changes in law or fact when deciding whether to grant a defendant's request for a sentence reduction under 3582. Concepcion holds to the contrary, and goes a step further concluding that the only limitation on a district court's discreation under 3582(c) are found in the Sentencing Commission's policy statements. This factor and criteria has now been eliminated by the delegated authority from Congress to the Sentencing Commission's revised policy statements and guidance under both the Amendments implemented on November 1, 2023, and more recently again on Novemebr 1,2024 and 28 U.S.C. 994((t), 1B1.13 and 1B1.13(b)(6) as under all of the aforemention and Concepcion, There is nothing that limit this Court's discreation to condider the request made by Petitioner, in fact these facts and law warrant relief as all of issues raised in this and pre-viously filed petition by Petioner are rooted in the findings and guidance handed down by both the Supreme Court and the U.S. Sentencing Commision to this matter.

Congress has delegated the authority to the Sentencing Commission, explaining that it "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. 994(t).

Petitioner was sentenced to 124 years, for his role in a series of robberies, though traumatic to it's victims (no one was physical hurt). Only seventeen years of the sentence imposed by the distict court were for the robberies themselves which are all so illegally imposed, with the remaining 107 years from "stacked" firearm counts under 18 U.S.C. 924(c), which at the time required the sentencing court to impose consecutive sentences for each additional count. (which to is at odds with what the statute actually reads). "Stacked" sentences were criticized as often excessively harsh, since "punishing first time offenders with twenty-five year sentences does not deter crime as much as it ruins lives." Deal v. United States, 508 U.S. 129, 146 n. 10,113 S.Ct. 1993, (1993)(Stevens, J., dissenting);see also U.S Sentencing Comm'n, 2011 Report to Congress; Mandatory Minimum Penalties in Federal Criminal Justice System 359(2011)("The 'stacking' of mandatory minimum penalties for multiple violations of section 924(c) results in excessively severe and unjust sentences in some cases.")

And finally, in 2018, Congress enacted the First Step Act, Pub. L. No, 115-391,132 Stat. 5194(2018). The First Step Act eliminated the practice of stacking 924(c) charges in

a first offense; now imposition of stacked 25 year mandatory minimum sentences is only permitted "[i]n the case of a violation of [924(c)] that occurs after a prior conviction under this subsection has become final." 18 U.S.C. 924(c) (emphasis added);see also Pub. l. No. 115-391 403(a). Because Petitioner's five counts of 924(c) were adjudicated at once, if sentence today and under the correct guidelines, he would only face a sentence of 25 years and from 1 day to 5 years on all non- related 924(c) counts.

   In 2022, however, the Sixth Circuit reasoned sitting en banc, whether such nonretroactive changes might be considered "extraordinary and compelling circumstances." McCall, 56 F. 4th 1048(6th Cir. 2022). The Court concluded that non-retroactive changes in the law, like the First Step Act's amendment of 924(c), are not 'extraordinary and compelling circumstances" that can form the basis of a sentence reduction," whether considered alone or together with other factors." Id. at 1065-66. The Sixth Circuit reasoned that while the relevent phrase-"extraordinary and(2024 U.S. Dist. LEXIS 11) compelling"-is alone unilluminating as to be specific type of circumstances that warrants relief, the context of our sentencing system provides clarity. McCall, 56 F. 4th at1055. First, with respect to the term "extraordinary," the court noted that it "is expected that the outcome in our legal system" that legal developments "apply only to 'defendants not yet sentenced'," and that "what is expected cannot be extraordinary." Id. at 1056. Second, with respect to

the word compelling, the court concluded that there is "little compelling about the duration of a lawfully imposed sentence." Id. After considering context, the Sixth Circuit concluded that the phrase "extraordinary and compelling" is unambigous. Id.at 1064. Accordingly, The government now would suggest that the Sentencing Commission's Amended Policy Statement must bow to the Sixth Circuit's interpretation in McCall because the Commissin's interpretation runs afoul of the unambigous meaning of statutory text. In reaching this conclusion, however, the Sixth Circuit noted that "Congress has delegated to the Commission the task of 'describ[ing] what should be considered extraordinary and compelling reasons...' 28 U.S.C. 994(t)' and expressly withheld judgement on "[w]hether the Commissiom could[2024 U.S. Dist. LEXIS12] issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language." Id. at 1054 n.3.

The recently issued Amended Policy Statement did just that. The Commission eventually regained its quorum and issued, among other provisions, 1B1.13(b)(6), which explains that an "extraordinary and compelling reason" exist when a nonretroactive change in the law that has created a gross disparity between an unusually long sentence (of which the defendant has served at least 10 years) and the sentence likely imposed at the time the motion is filed. Given that the Sixth Circuit decided McCall in the absence of an application policy statement, and explicitly left open the possibility that a provision such as

1B1.13(b)(6) could abrogate its holding, this Court is free to resolve that threshold question in the first instance; does the Sixth Circuit's conclusion in McCall or U.S.S.G. 1B1.13(b)(6) control this Court's ability to consider a nonretroactive change in the law?

Congress vested the Sentencing Commission with "significant discreation in formulating guidelines," Mistretta v. United States, 488 U.S. 361,377, 109 S.Ct. 647(1989), including the power "to issue binding policy statements," United States v. Horn, 679 F.3d 397,404 (6th Cir. 2012). Only if "the Commission's revised commentary is at odds with [ the statute's] plain language" must the Commission's interpretation "give way" to the statutory text. United States v. LaBonte,520 U.S. 751,757(1997). One cannot see how the phrase "extraordinary and compelling" is a "specific directive" to which the Commission's interpretation here did not "bow." LaBonte, 520 U.S. at 757; see also United States v. Padgett, No. 5:06-cr-00013, at9 (N.D. Fla. Jan. 30,2024)(concluding that "[t]he Commission did its part by adopting 1B1.13(b)(6), which would survive the scrutiny under LaBonte"). In fact, Congress explicitly instructed the Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples." 994(t). And the Commission's description of what is "extraordinary and compelling" is binding on this Court. Section 3582(c)(2) "empowers a district court to retroactively reduce a defendant's sentence based on a subsequent reduction in the Guidelines only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" and [t]he use of the word 'if' indicates that the district court's power is conditioned upon the Commission's

policy statement." Horn,679 F.3d at 401. In fact, the Commission explained that 1B1.13(b)(6) was designed to respond directly to a circuit split of which McCall was a part, and that, in the Commission's view, it was better positioned to resolve the issue in the first instance than the Supreme Court. Its decision to do so was not without precedent. The Supreme Court has previously deferred to the Commission to resolve a circuit split, explaining that because the Commission was a unique creature with a "statutory duty 'periodically [to] review and revise' the Guidelines" that "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." Braxton v. United States, 500 U.S. 344,348(1991)(quoting 28 U.S.C. 994(o)). That is exactly what the Commission did here.

Congress did delegate authority to the Commission to interpret the meaning of the phrase "extraordinary and compelling." And when "Congress entrusts to the [Commission], rather than to the courts, the primary responsibilty for interpreting the statutory terms[,]... [a] reviewing court is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." Batterton v. Francis,432 U.S. 416,425(1977); see also United States v. Capps, No.1:11-cr-00108,at 19(E.D. Mo. Jan.31,2024)(applying this principle to Congress's instruction to the Commission to define "extraordinary and compelling"). Of course, the Commission is not free to adopt irrelevent or nonsensical interpretations, but in  view of 1B1.13(b)(6) " does not even approach these limits of the delegated authority." Batterton,432 U.S. at 428, particulary

11

in light of the Commission's extensive expertise in sentencing. This view on the scope of the Commission's authority is buttressed by the circuit split that was brewing on this issue before the Commission weighed in. Specifically, no fewer than four courts of appeals had concluded that the text of 3582(c)(2) permitted courts to consider nonretroactive sentencing developements in the compassionate release framework. See U.S. v. Ruvalcaba,26 F. 4th 14,16,26-28 (1st Cir. 2022); U.S. v. McCoy, 981 F.3d 271,286-88(4th Cir.202); U.S. v. Chen,48 F.4th 1092,1098(9th Cir. 2022); U.S. v. McGee, 992 F.3d 1035,1047-48(10th Cir.2021). On the other hand, several other courts of appeals had reached the same conclusion as Mccall. See U.S. v. Andrews, 12 F. 4th 255,260-62(3d Cir. 2021): U.S. v. McMaryion, 64 F. 4th 257,259-60(5th Cir. 2023); U.S. v. King, 40 F. 4th 594, 595(7th Cir. 2022); u.S. v. Crandell, 25 F. 4th 582,585-86(8th Cir. 2022). That split alone suggests an ambiguity to the text of 3582 (c)(1)(A). See Padgett, No. 5:06-cr-00013,at 6(concluding that the circuit split "suggests the meaning of 'extraordinary and compelling' is not as clear as the government would ask this court to believe.").

Moreover, 1B1.13(b)(6) does not give courts carte blanche to consider nonretoactive changes in the law. Instead, it responds to the concerns motivating McCall by creating a narrow exception to a general bar on consideration of nonretroactive changes elsewhere in the policy statement, 1B1.13(c); courts may only do so if the individual in question was sentenced to an unusually long sentence of which they have already served 10 years, and the nonretroactive change in sentencing law created a "gross disparity" between the original sentence and the likely sentence today. See Capps, No.1:11-

12

-cr- 00108,at 18(noting that "the Commission squarely addressed" a similiar concern raised by the Eighth Circuit " by narrowly limiting the circumstances in which a defendant may be resentenced" as a result of nonretroactive changes). While 1B1.13 does permit some consideration of nonretroactive changes, it also forecloses consideration of other nonretroactive changes that fall outside <u>1B1.13(b)(6)</u>'s narrow parameters.

Although the Sixth Circuit concluded in <u>McCall</u> that nonretroactive changes in sentencing law did not constitute "extraordinary and compelling" circumstances, it did so without the benefit of the Commissions's expert interpretation of the statutory phrase, and only in light of its "discreation to define' extraordinary and compelling' without reference to the Sentencing Commission's guidance." 56 F.4th at 1054. And explicitly leaving open the possibility that the Commission might promulgatee a contradictory policy statement. Id. at 1054 n.3. Now Congress's unambigous directive explicitly instructs courts to ensure that their reduction analysis complies with 1B1.13. See 3582(c)(1)(A)(i) (explaining that this Court must ensure its "reduction is consistent with applicable policy statements issued by the Sentencing Commission.") And 1B1,13 explains that <u>1B1.13(b)(6)</u> is circumstance in which "extraordinary and compelling reasons exist." 1B1.13(b). As a result, this Court is no longer free to rely on the Sixth Circuit's conclusion that nonretroactive sentencing developments are irrelevent to that analysis.

This Court can find support for this analysis in the Eastern District of Missouri, where a district court was asked to resolve the same tension between <u>1B1.13(b)(6)</u> and Eighth Circuit precedent. See

Capps, No.1:11-cr-00108,at 15-20. In Capps, the defendant, who had several prior convictions, was sentenced to a mandatory term of life imprisonment when convicted for one count of possession with intent to distribute 50 grams or more of methamphetamine. Id. at5. Once the First Step Act prospectively "eliminated mandatory life sentences for non-violent drug offenders," Capps sought a sentence reduction based on the resulting disparity. Id. at6. Even though the Eighth Circuit had held, prior to the issuance of 1B1.13(b)(6), that nonretroactive changes in sentencing law were to common to be "extraordinary." Crandall, 25 F.4th at 586, the court in Capps concluded that it was bound by the policy statement and not Crandall, because Crandall was decided before the Commission wighed in. Capps, No. 1:11-cr- 00108, at 15. Having concluded that 1B1.13(b)(6) was a valid exercise of the authority Congress expressly delegated to the Commission to define "extraordinary and compelling," the court concluded that Mr. Capps presented "exceptional and compelling" reasons for a sentence reduct-ion and granted his motion. Id. at 11-15,19 see also Padgett, No. 5:06 -cr-00013,at 6-10(rejecting the Government's argument that "1B1.13(b)(6) was an atextual interpretation of "extraordinary and compelling").

Under above this Court can conclude that McCall's catergorical ban on the consideration of nonretroactive sentencing developments no longer applies, this Court must consider whether the circumstances at issue here are indeed "extraordinary and compelling." As discussed above, the newly promulgated 1B1.13(b)(6), entitled "Unusually Long Sentence," provides: if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law(other than an amendment to the Guidelines Manual that has not been made retroactive may be considered in determining

whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. Petitioner has already been incarcerated for 15 years, and the proposed sentence of a 124 years is, without doubt, an unusually long one. By comparison, the average federal sentence for murder in the Sixth Circuit last year was 21 years. In this matter, no one was even physically harmed. (though mental and emotional, which Petitioner understands and 3553 (a) Factors acknowledge same). And the FSA's modifications to 924(c) certainly produce a "gross disparity" between the sentence of Petitioner and that of one he would likely receive today. Petitioner, would be subjected to a 25 year sentence a 75 year difference on the 924(c) counts alone.(emphasis added).

In this view, the question is not whether, broadly speaking, changes in sentencing law are "exceptional and compelling" circumstances. It is instead the appalling length of Petitioner's sentence in absolute terms, and the magnitude of disparity between Petitioner sentence and what a similiar situated defendant would face today, together constitute an "exceptional and compelling" circumstance. See Padgett, No.5:06-cr-00013, at 7("Extraordinary' is an adjective addressing matters of degree, not kind."). This defendant-specific approach to language of statute is reflected in the Commission's decision only to allow consideration of nonretroactive changes in the very narrow circumstances outlined in 1B1.13(b)(6). When taken into consideration with all of the factors in Petitioner's develop-

ment since he was sentenced, is exactly the sort envisioned by the
Commission in drafting 1B1.13.(b)(6).

Petitioner also asserts that should this Honorable Court find
itself unable to consider nonretroactive sentencing changes, it may
rely on the "catch all" provision in 1B1.13(b)(5), which provides
that "exceptional and compelling" circumstances obtain when;

> The defendant presents any other circumstances or
> combination of circumstances that when considered
> by themselves or together with any of the reason
> described in paragraphs(1) through (4), are sim-
> iliar in gravity to those described in paragraphs
> (1) through (4). Although this Court is in fact
> free to consider nonretroactive changes in the
> law under 1B1.13(b)(6), it is also clear that
> Petitioner is entitled to a sentence reduction
> under 1B1.13(b)(5), even if consideration of the
> the nonretroactive change was foreclosed, even
> though that it has been clearly shown that it is
> in fact not under the delegated authority given
> by Congress to the Commission and 1B1.13(b)(6).
> (emphasis added).

As a result of the government's premature supplemental brief, after
it's request for a Stay pending the outcome of both McHenry and
Bricker, Id., as well as the meritous and factual authority cited
herein by Petitioner. Showing that this Court has the guidance of
both the ruling under Concepcion and that of the delegated authority

by Congress to the U.S.S.C. and 1B1.13(b)(6), 28 U.S.C. 99(t) and the Amendments of both November 2023 and 2024 respectively, this matter is well within this Honorable Court's authority to rule on the Motion before it under 3582(c)(1)(A), in favor of Petitioner and cast aside the broad stroke of wishful legal jargon by the government in an attempt to have it both ways in this matter, by filing a supplemental brief, yet asking to stay the matter as well. The United States Supreme Court spoke when they decided Concepcion. But to go one step further, the United States Sentencing Commission, clearly articulated by way of Congressional power, with precise and clear guidance for this and other Court's when dealing with that of cases such as this and their power and discreation to grant relief when the issues raised by defendant's meet the criteria as outlined under 1B1.13(b)(6).

## CONCLUSION

Petitioner Richardson, prayerfully and humbly request that for the aforemention reasons, this Honorable Court grant the relief requested herein and that of initial brief, as well as his supporting documentation under 3553(a), post rehabilitation and post-incarceration conduct. Not to mention all other supporting documents sent thus far in this matter.

Respectfully, _Frank Richardson_

On the 20th day of February, 2024.

FRANK RICHARDSON
(pro se) # 44641-039
USP MCCREARY
PO BOX 3000
PINE KNOT, KY. 42635

(28 U.S.C. 1746)

## CERTIFICATE OF SERVICE
## FOR PRO SE DOCUMENTS

On the __20th__ day of __February__, 20_25_, the undersigned party served the following document or documents (list documents):

SUPPLEMENTAL BRIEF IN RESPONSE TO GOVERNMENT'S BRIEF IN OPPOSITION TO RELIEF UNDER 3582(c)(1)(A), "EXTRAORDINARY AND COMPELLING REASONS" COMPASSIONATE RELEASE

on (list names and addresses of parties or attorneys):

CLERK OF THE COURT (The Honorable MARK A. Goldsmith Chambers), U.S. DISTRICT COURT, 231 WEST LAFAYETTE BLVD, DETROIT, MI. 48226 (With request for ECF for all parties of record).

by delivering a copy by (state how you served the document, such as U.S. Mail):

First Class Pre paid Postage + via Legal Mail at U.S.P. McCreary, P.O. Box 3000, Pine Knot, KY. 42635 (CERTIFIED MAIL #7022 0410 0000 5285 9445) United States Postal Service.

_Frank Richardson_
(Signature)

FRANK RICHARDSON #44641-039
(Print or Type Name)    ( pro se)

U.S.P. McCreary
P.O. Box 3000
Pine Knot, KY. 42635

FILED PURSUANT TO
(28 U.S.C. 1746)



A Reduction in Sentencing is
Warranted After Consideration of
18 U.S.C. 3553(a) Factors, and
18 U.S.C. 3142(g) Factors, and
Sentencing Guidelines' Policy

Having previously established Petitioner has exhausted his re-
quirements of the Statute, and that "extraordinary and compelling
circunmstances" exist, this Court must consider the factors under
18 U.S.C. 3553(a), 18 U.S.C. 3142(g), and the Sentencing Guidelines
policy to determine whether a reduction in sentence is warranted.

With respect to 18 US.C. 3146(g)(1), Richardson's initial offenses
were both severe and traumatic upon it's victims. Again, he acknowledge
same and deeply empathize and regret their suffering as a result of
these senseless acts, as well as understand from his many course and
reflections upon the irrational behavior. While also submitting the
many efforts and strides he has made and his previously filed 3553(a)
Factors to this Honorable Court. Not to mention his many post-rehabil-
itation accomplishment and that of his clear conduct of violence, drugs
and weapons, all backed by the findings of both the U.S.S.C. and the
ruling under Pepper v. United States, 113 S.Ct. 1229,1241(2011) and
at 1242, dealing with Section 3553(a)(2).

Richardson, is no longer a danger to the safety of others in society
in light of the following; U.S.S.G. 1b1.13(2) and 18 U.S.C. 3142(g)(4).
Quite to the contrary, his rehabilitative efforts demonstrate a continous
commitment to personal betterment. Richardson has both family support
and resources, as well as a comprehensive release plan, which further
demonstrates his willingness to reform and rehabilitate his life.

1

Data from the United States sentencing Commission further indicates that he is not a danger to society and others. Richardson, is currently 51 years old. A Report by the United States Sentencing Commission indicates that the amount of arrests of federal offenders in his age group is much less than the number of federal offenders in his age group at the time of the offense. (See Chart and Findings below, [*] is <u>age at time of offense</u>, while (+) is age of Richardson currently.).



Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders- Executive Summary, at 11 (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited December 17, 2021).



FRANK RICHARDSON #44641-039
UNITED STATES PENITIARY McCREARY
P.O. BOX 3000
PINE KNOT, KY. 42635

CERTIFIED MAIL
7022 0410 0000 5285 9445

U.S. POSTAGE PAID
FCM LG ENV
PINE KNOT, KY 42635
FEB 24, 2025
$0.00
R2308K140822-01

Retail
48226
RDC 99

TO THE CLERK OF THE U.S. DISTRICT COURT
THE HONORABLE JUDGE MARK A. GOLDSMITH
FOR THE UNITED STATES
DISTRICT COURT OF THE EASTERN DISTRICT OF MICHIGAN
231 W. LAFAYETTE BLVD
DETROIT, MI. 48226

LEGAL MAIL
February 21, 2025
(MAILED ON)

U.S. POSTAL TRACKING
# 7022 0410 0000 5285 9445
MAILBOX RULE
Houston v. Lack, 101 L.Ed.2d 245 (1988)